1  Michael J. Gearin, WSBA # 20982          Honorable Brian D. Lynch
   K&L Gates LLP                            Chapter 11
2  925 Fourth Avenue, Suite 2900
   Seattle, WA  98104-1158
3  (206) 623-7580

4

5

6

7

8                   IN THE UNITED STATES BANKRUPTCY COURT

9        FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

   In re:
10                                              No.: 17-41780-BDL
   GATEWAY MEDICAL CENTER II, LLC
11                                              CREDITOR'S CHAPTER 11 PLAN FOR
          Jointly Administered with            ADMINISTRATIVELY
12                                             CONSOLIDATED DEBTORS
   GATEWAY MEDICAL CENTER, LLC,
13 Case No. 17-41779-BDL

14                   Debtors.

15

16         Opus Bank ("Opus" or the "Plan Proponent"), a secured creditor of Debtors and debtors-in-

17 possession, Gateway Medical Center II, LLC ("Gateway II") and Gateway Medical Center, LLC

18 ("Gateway") (collectively, "Debtors"), proposes the following Plan of Reorganization for

19 Administratively Consolidated Debtors ("Plan") pursuant to 11 U.S.C. §§ 101 *et seq*. The Plan

20 proposes independent treatment and satisfaction of the claims of creditors of each Debtor by means

21 of independent liquidation of each Debtor's assets.

22                        **I.      INTRODUCTION**

23         Under the Plan, a Plan Administrator will be appointed to market and sell real Properties

24 located at 2621 NE 134th Street, Vancouver, Washington ("Gateway II Building") and 2501 NE

25 134th Street, Vancouver, Washington ("Gateway Building") (collectively, the "Properties") and the

26 proceeds of those sales will be distributed to creditors. The Properties consist of adjacent medical

CREDITOR'S CHAPTER 11 PLAN
Page 1 of 26

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

500867178 v2

office buildings. The Gateway II Building was constructed in 2007 and has 32,041 rentable square feet on a 2.05 acre site. The Gateway building was constructed in 2001 and has 22,077 rentable square feet on a 1.56 acre site. The Gateway Building is owned by Gateway and the Gateway II Building is owned by Gateway II. The buildings share a parking lot. Together the buildings comprise the Gateway Medical Campus. At the request of Opus, D. Keith Kaiser ("Kaiser") of Kidder Mathews ("KM") was appointed as custodial receiver for each of the Debtors on December 30, 2016 and currently manages the Properties. With the Bankruptcy Court's approval, the Debtors hired Marcus & Millichap ("Broker") to list and market the Properties to obtain the highest and best price. Under the Plan, the Plan Administrator will have sole control of the marketing and sale of the Properties following confirmation. If the Plan Administrator can solicit an offer to sell the Properties on terms which will pay Opus in full before April 30, 2018 the Properties will be sold pursuant to § 363 of the Bankruptcy Code and sales proceeds paid to creditors in order of priorities established under the Bankruptcy Code and the Plan. If no offer to purchase on terms that pays Opus in full is received which will close on or before April 30, 2018, the Plan Administrator will move to sell the Properties to Opus as a stalking horse bidder, based on Opus' credit bid.

Proceeds from the sale of Properties may be sufficient to pay all Allowed Claims or may be sufficient only to pay the Allowed Claims of senior secured creditors. Opus believes that the Plan provides the best avenue to provide a return for creditors in the nearest term and at the lowest cost and to provide certainty that the Debtors' assets will be timely liquidated to satisfy creditors' claims. Opus asks that you support the Plan. Enclosed you will find a ballot for the Plan for creditors of each Debtor. Opus asks that you return a ballot voting in favor of the Plan only if you hold a claim against that particular Debtor.

## II.    DISCLOSURE STATEMENT

Enclosed is a Disclosure Statement to assist you in understanding the Plan and making an informed decision regarding its terms. Pursuant to 11 U.S.C. § 1125 and Bankruptcy Rule 3016(c), Opus filed and the Bankruptcy Court approved the Disclosure Statement prior to this Plan being

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

submitted to creditors. The Disclosure Statement provides information to aid and assist creditors in voting on the Plan. YOU ARE URGED TO CAREFULLY READ THE DISCLOSURE STATEMENT IN EVALUATING THE IMPACT OF THE PLAN UPON YOUR CLAIMS.

### III. DEFINITION OF TERMS AND RULES OF INTERPRETATION

Definitions of certain terms used in this Plan are set forth below. Other terms are defined in the text of this Plan or the text of the Disclosure Statement. Terms used and not defined in this Plan or the Disclosure Statement shall have the meanings given in the Bankruptcy Code or Bankruptcy Rules, or otherwise as the context requires. The meanings of all terms shall be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined. The words "herein," "hereof," "hereto," "hereunder," and others of similar import, refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. When used in this Plan, the following terms shall have the meanings specified below, unless the context otherwise requires:

3.1 <u>Administrative Expense Claim</u>: An Allowed Claim entitled to priority under § 507(a)(2) of the Bankruptcy Code, including (a) claims incurred by the Debtors since the Petition Date and allowed by the Court of a type described in § 503(b) of the Code; (b) all Allowed Claims of Professional Persons pursuant to §§ 330 and 331 of the Code and Bankruptcy Rule 2016; and (c) all substantial contribution claims of Opus; and (d) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

3.2 <u>Allowed</u>: Allowed means, when used to modify the term Claim or Administrative Expense Claim, either a proof of which has been properly filed or, if no Proof of Claim was so filed, which was or hereafter is listed on the Schedules as liquidated in amount and not disputed or contingent or an Administrative Expense Claim that the Debtors have received by the applicable bar

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

date, and, in each case, a Claim or Administrative Expense Claim as to which no objection to the allowance thereof, or motion to estimate for purposes of allowance, shall have been filed on or before any applicable period of limitation that may be fixed by the Bankruptcy Code, the Bankruptcy Rules and/or the Bankruptcy Court, or as to which any objection, or any motion to estimate for purposes of allowance, shall have been so filed, to the extent (a) such objection is resolved between such Claimant and either the Debtors or the Reorganized Debtors or (b) such claim is allowed by a Final Order.

3.3    <u>Allowed Secured Claim</u>: An Allowed Claim that is secured by a lien, security interest or other charge against or interest in property in which the Debtors have an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (as set forth in the Plan, or if no value is specified, as determined in accordance with Section 506(a) of the Bankruptcy Code or, if applicable, Section 1111(b) of the Bankruptcy Code) of the interest of the holder of such Claim in Debtors' interest in such property or to the extent of the amount subject to setoff, as the case may be.

3.4    <u>Avoidance Action</u>: Any causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims and demands whatsoever, whether known or unknown, of the Estate(s) arising out of or maintainable pursuant to Chapter V of the Bankruptcy Code or under any other similar applicable law, regardless of whether or not such action has been commenced prior to the Effective Date.

3.5    <u>Bankruptcy Case(s), Gateway Bankruptcy and Gateway II Bankruptcy</u>: As the context requires the Chapter 11 bankruptcy case of one of the Debtors, or collectively the jointly administered cases of the Debtors. The "Gateway Bankruptcy" refers to and means the above captioned Chapter 11 Bankruptcy Case filed on behalf of Gateway.  The "Gateway II Bankruptcy" refers to and means the above captioned, Chapter 11 Bankruptcy Case filed on behalf of Gateway II.

3.6    <u>Bankruptcy Code or Code</u>: The Bankruptcy Reform Act of 1978, as amended from time to time, set forth in Sections 101 *et seq.* of Title 11 of the United States Code.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

3.7     Bankruptcy Court or Court: The United States Bankruptcy Court for the Western District of Washington, before which the Bankruptcy Case is pending, or if that Court ceases to exercise jurisdiction over the Bankruptcy Case, the Court that does exercise jurisdiction.

3.8     Bankruptcy Rules: Collectively, the Federal Rules of Bankruptcy Procedure, as amended and promulgated under Section 2075, Title 28, of the United States Code, and the local rules and standing orders of the Bankruptcy Court.

3.9     Boverman: Manager of each of the Debtors, Daniel J. Boverman.

3.10    Business Day: Any day, other than a Saturday, Sunday or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a)(6).

3.11    Cash: Lawful currency of the United States of America and equivalents, including, without limitation, checks, wire transfers and drafts.

3.12    Claim: A claim as defined in § 101(5) of the Bankruptcy Code.

3.13    Claims Bar Date: The deadline of September 18, 2017 set by the Bankruptcy Court by which Proofs of Claim must have been timely filed in the Bankruptcy Case(s).

3.14    Class: A class of Claims or Interests as defined in this Plan.

3.15    Collateral: Any property in which Debtors has an interest that is subject to a lien or security interest securing the payment of an Allowed Secured Claim.

3.16    Confirmation: The entry of the Confirmation Order by the Bankruptcy Court.

3.17    Confirmation Date: Date on which the Confirmation Order is entered on the docket by the Clerk of the Bankruptcy Court.

3.18    Confirmation Hearing: The hearing or hearings conducted by the Bankruptcy Court in connection with Confirmation of the Plan.

3.19    Confirmation Order: The order of the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

3.20    Creditor: Any entity holding a Claim against the Debtor.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

3.21 <u>KM</u>: D. Keith Kaiser, CPM of Kidder Mathews ("KM"), appointed to act as custodial receiver of the Properties under RCW 7.60.035 by the Clark County Superior Court in *Opus Bank v. Gateway Medical Center, LLC* (Case No. 16-2-02503-0) and case, *Opus Bank v. Gateway Medical Center II, LLC* (Case No. per appointment orders entered on or about December 30, 2016 (collectively, the "Receivership Cases").

3.22 <u>Custodial Receiver's Accounts</u>: Those certain bank accounts maintained by the Custodial Receiver in his administration of the Properties in connection with the Receivership Cases.

3.23 <u>Debtors</u>: Debtors-in-possession, Gateway Medical Center, LLC ("Gateway") and Gateway Medical Center II, LLC ("Gateway II").

3.24 <u>Disputed Claim</u>: A Claim of an alleged creditor that was listed in any of the Joint Debtors' Schedules as "disputed" and which has not subsequently become an Allowed Claim, or as to which an objection has been filed by a party-in-interest that has not been resolved pursuant to a Final Order. If an objection related to the allowance of only a part of a Claim has been timely Filed or deemed timely Filed, such Claim shall be a Disputed Claim only to the extent of the objection.

3.25 <u>Effective Date</u>: The Effective Date is one Business Day after the Confirmation Order becomes a Final Order.

3.26 <u>Equity Interests</u>: The equity interests held in each of the Debtors as of the Effective Date.

3.27 <u>Estate(s)</u>: The estates created pursuant to § 541 of the Bankruptcy Code as to each of the Debtors.

3.28 <u>Federal Judgment Rate</u>: The interest rate allowed on judgments entered in Federal court pursuant to 28 U.S.C. § 1961(a), defined as the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week immediately preceding the date of the entry of the order of Confirmation.

3.29 <u>Final Order</u>: An order or judgment entered on the docket by the Clerk of the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

500867178 v2

that has not been reversed, stayed, modified or amended and as to which the time for filing a notice of appeal, or petition for certiorari or request for certiorari, or request for rehearing shall have expired.

3.30    Forbearance Defendants: Collectively refers to Maxim, Gateway National, Vancouver RV, and DeFrees who each entered into that certain Forbearance Agreement with Maxim on or about June 15, 2016.

3.31    Gateway: Debtor-in-possession, Gateway Medical Center, LLC.

3.32    Gateway II: Debtor-in-possession, Gateway Medical Center II, LLC.

3.33    General Unsecured Claim: An Unsecured Claim that is not entitled to priority under the Bankruptcy Code.

3.34    Holder: The holder of a Claim or Equity Interest, as the case may be.

3.35    Impaired: Impaired within the meaning of § 1124 of the Bankruptcy Code.

3.36    Leasing Agent. Leasing agent, Eric Fuller & Associates, Inc. (the "Leasing Agent") whose employment was approved by the Bankruptcy Court by order entered September 11, 2017.

3.37    Maxim: Refers to and means Creditor, Maxim Commercial Capital, LLC.

3.38    Maxim Loans: Collectively refers to the two loans Maxim asserts it entered into with non-debtor, third party Gateway National Corporation ("Gateway National") as follows. Maxim asserts it entered into an Equipment Finance Agreement with Gateway National whereby Maxim loaned Gateway National the principal sum of $750,000 on or about September 10, 2015. Maxim further alleges that on or about November 24, 2015, Gateway National executed a promissory note in favor of Maxim in the principal amount of $2,329,600.

3.39    Notice and Hearing: Proceedings as contemplated under Bankruptcy Code § 102(2).

3.40    Opus: Refers to and means Opus Bank.

3.41    Opus Account: That certain bank account of Gateway at Opus Bank (account number ending in 9868), containing approximately $63,000, which is subject to restrictions under the applicable loan documents.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1     3.42    <u>Payments</u>: Collectively refers to all payments by Debtors to third parties as provided

2 in the Plan.

3     3.43    <u>Petition Date</u>: May 4, 2017, the date upon which each of the Joint Debtors

4 commenced their respective Bankruptcy Cases.

5     3.44    <u>Plan</u>: This plan in its present form or as it may be amended or modified from time to

6 time.

7     3.45    <u>Plan Administrator</u>: D. Keith Kaiser ("Kaiser") of Kidder Mathews.

8     3.46    <u>Priority Tax Claim</u>:  An Allowed Claim of a Taxing Agency for the principal amount

9 of a tax within the meaning of § 507(a)(8) of the Code, and statutory interest accruing thereon prior

10 to the Petition Date. Any amount that comprises a penalty on such Allowed Claim shall not be a

11 Priority Tax Claim but shall be deemed to be and treated as an Unsecured Claim.

12     3.47    <u>Pro Rata</u>: Proportionally so that the ratio of the amount distributed on account of a

13 particular Allowed Claim to the amount of such Allowed Claim is the same as the ratio of the

14 amount distributed on account of all Allowed Claims in the Class of which such particular Allowed

15 Claim is a member to the total amount of all Allowed Claims in such Class.

16     3.48    <u>Professional Persons</u>: A person retained or to be compensated by the Joint Debtors, or

17 any of them, pursuant to §§ 326, 327, 328, and/or 330 of the Bankruptcy Code.

18     3.49    <u>Proof of Claim</u>: A proof of claim as defined in Bankruptcy Rule 3001(a).

19     3.50    <u>Properties, Gateway II Property and Gateway Property</u>: Properties shall mean

20 collectively, (1) the real property and improvements located at 2621 NE 134th Street, Vancouver,

21 Washington and owned by Gateway II ("Gateway II Property") and (2) the real property and

22 improvements located at 2501 NE 134th Street Vancouver, Washington and owned by Gateway

23 ("Gateway Property").

24     3.51    <u>Rejection Claim:</u> A Claim entitled to be filed as a result of a Debtor rejecting an

25 executory contract in these Bankruptcy Cases.

26

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

500867178 v2

3.52 <u>Reorganized Debtor(s)</u>: Following the Effective Date, separately, each of the Debtors as reorganized pursuant to the terms of the Plan.

3.53 <u>Schedules</u>: The schedules of assets, liabilities and executory contracts and the statement of financial affairs of each of the Debtors filed pursuant to § 521 of the Bankruptcy Code, and in accordance with the Bankruptcy Rules, as each has been, or may be, amended and supplemented from time to time.

3.54 <u>Secured Claim</u>: An Allowed Claim that is a secured claim against Properties, Assets or Cash Collateral of the Debtors determined in accordance with § 506(a) of the Bankruptcy Code, or that is deemed allowed as a secured claim pursuant to this Plan.

3.55 <u>Secured Creditors</u>: Collectively, the Holders of Allowed Secured Claims.

3.56 <u>Taxing Agency(ies)</u>: Any governmental or municipal agency holding a Claim that is not a Secured Claim and that is otherwise entitled to treatment as a Priority Tax Claim.

3.57 <u>Unclassified Claim</u>: An Allowed Claim that is not within the definition of any Class.

3.58 <u>Unimpaired</u>: With respect to any Claim or Interest, not impaired within the meaning of § 1124 of the Bankruptcy Code.

3.59 <u>Unsecured Claim</u>: A Claim that is (a) based upon (i) a Proof of Claim executed and timely filed in accordance with Bankruptcy Rule 3003(c) prior to the Claims Bar Date, or (ii) the listing of the claim in the Debtor's Schedules as other than disputed, contingent or unliquidated, and (b) not a Secured Claim, Administrative Claim, Priority Tax Claim, or Other Priority Claim.

## IV. CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims against the Debtors are classified as set forth herein. There are four (4) Classes of Claims and one (1) Class of Equity Interests, and certain other Claims are Unclassified Claims pursuant to applicable provisions of the Bankruptcy Code. The Classes of Claims are as follows:

<u>Class 1</u>: Secured Claims of the Clark County Treasurer (Impaired)

<u>Class 2</u>: Secured Claims of Opus Bank (Impaired)

<u>Class 3</u>: Secured Claims of Maxim (Impaired)

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Class 4: General Unsecured Claims (Impaired)

Class 5: Equity Interests (Impaired)

## V. PROVISIONS FOR SATISFYING CLAIMS AND SPECIFYING TREATMENT OF EACH CLASS

If the Court confirms the Plan, on the Effective Date the Class into which each Allowed Claim and Allowed Interest fits will determine the manner in which such Claim or interest will be treated. Unless otherwise specified below, each Class is impaired under the Plan. In the event that a Class does not accept the Plan, the Debtors will request that the Court confirm the Plan without the consent of such Class pursuant to Code § 1129(b). The definition of each class and its treatment of Claims are as follows.

5.1    Unclassified Claims.

A.    **Administrative Expense Claims.** Allowed Administrative Claims based on liabilities incurred by the Debtors or the estate in the ordinary course of business, including Administrative Claims arising from the sale of goods or provision of services on or after the Petition Date, Administrative Claims of for taxes incurred after the Petition Date and Administrative Claims arising under Executory Contracts and Unexpired Leases shall be paid in the ordinary course of business by the Reorganized Debtors pursuant to the terms and conditions of the particular transactions giving rise to such Administrative Claims. Holders of such ordinary course administrative claims shall not be required to file any request for payment of such Administrative Claims. Each holder of an Allowed Administrative Expense Claim, other than ordinary course Administrative Claims, shall be paid by the Plan Administrator in full in Cash on the Effective Date, or as soon thereafter as they are Allowed or as otherwise agreed. The Plan Proponent and the Plan Administrator shall have the right to object to any asserted request for payment of Administrative Claims.

B.    **Priority Tax Claims.** There are no Priority Tax Claims in this case. The Debtors are limited liability companies. As a result, they are treated as "pass-through" entities for the

CREDITOR'S CHAPTER 11 PLAN
Page 10 of 26

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

500867178 v2

Case 17-41780-BDL    Doc 118    Filed 11/27/17    Ent. 11/27/17 19:01:35    Pg. 10 of 26

1  purpose of federal income taxes. Thus, the Debtors are not liable for such taxes. As of the filing of

2  this Plan, the Claims Bar Date had passed and no taxing agency has filed a Proof of Claim.

3  The Clark County Treasurer holds Claims for unpaid real property taxes against each of the

4  Debtors. However, those claims are respectively secured by each of the Debtors' Properties. Since

5  the Clark County Treasurer holds Secured Claims to the extent they are Allowed Claims, the claims

6  are not Priority Tax Claims. The Allowed Claims of the Clark County Treasurer are provided for as

7  secured claims under Section 5.2 of the Plan. Pursuant to Code §1129(a)(9)(D), the Clark County

8  Treasurer claims shall receive treatment not less favorably under Section 5.2 than they would have

9  received if its Claims were treated as Priority Tax Claims and paid pursuant to the provisions of

10  Code Section 1129(a)(9)(C).

11  **C.    Bankruptcy Fees.** The Plan Administrator shall be responsible for timely

12  payment of fees incurred pursuant to 28 USC § 1930(a)(6) until the case is closed, converted or

13  dismissed. After confirmation, the Plan Administrator shall file with the Court a monthly financial

14  report for each month, or portion thereof, that the case remains open. The monthly financial report

15  shall include a statement of all disbursements made during the course of the month, whether or not

16  pursuant to the Plan.

17  **D.    Professional Fees.** The Plan Administrator shall pay Professional Fees when

18  Allowed as Administrative Expense Claims after entry of an Order approving the amount of the fees.

19  The Plan Administrator shall pay all Allowed Professional Fees solely from the proceeds of the sale

20  of the Properties.

21  **E.    Substantial Contribution Claim of Opus.** The Plan Administrator shall pay

22  the substantial contribution claim of Opus pursuant to § 503(b)(3)(D) to the extent Allowed as

23  Administrative Expense Claim solely from the proceeds of the sale of the Properties.

24  5.2    Class 1: Secured Claims of Clark County Treasurer.

25  Class 1 consists of the Secured Claims of the Clark County Treasurer for unpaid real

26  property taxes assessed against the Properties (the "Class 1 Claims"). The Class 1(a) Claim is the

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

claim of the Clark County Treasurer against Gateway and the Class 1(b) Claim is the claim of the Clark County Treasurer against Gateway II. The Plan Administrator shall pay the Class 1 Claims according to the following terms:

        **A.**    **Description of Class 1 Claims.** The Clark County Treasurer has filed Proofs of Claim in both Bankruptcy Cases as follows: (1) Claim 3-1 for $84,585.38 filed in the Gateway Bankruptcy Case and secured by a statutory lien on the Gateway Property; and Claim 1-2 for $110,973.54 filed in the Gateway II Bankruptcy Case and secured by a statutory lien on the Gateway II Property. In October, 2017, KM paid postpetition 2017 taxes in the amount of $23,202.62 for Gateway and $30,430.38 for Gateway II which reduced the amounts under the Clark County claims. As of November 27, 2017, the Clark County Treasurer lists unpaid taxes of $64,352.94 for Gateway and $84,440.47 for Gateway II.

        **B.**    **Allowance of Class 1 Claims.** Upon Confirmation, the Class 1(a) Claim shall be deemed allowed in the amount of $64,352.94 in the Gateway Bankruptcy Case. Upon Confirmation, the Class 1(b) Claim shall be deemed allowed in the amount of $84,440.47 in the Gateway II Bankruptcy Case.

        **C.**    **Retention of Security Interests.** Clark County holds first-position statutory liens against each of the Properties pursuant to RCW 84.60.010. Clark County shall retain its lien on the Gateway Property until the Class 1(a) Claim secured by that property is paid in full. Clark County shall retain its lien on the Gateway II Property until its Class 1(b) Claim secured by that property is paid in full.

        **D.**    **Payment.** The Plan Administrator shall pay the Class 1 Claims in full from the proceeds of the sale of each of the Properties securing such Claims. The Class 1(a) Claim shall be paid solely from the Proceeds of the sale of the Gateway Property and the Class 1(b) Claim shall be paid solely from the proceeds of the sale of the Gateway II Property.

        **E.**    **Interest Rate.** The Class 1 Claims shall accrue interest at the statutory rate of twelve percent (12.0%) per annum until paid in full.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

500867178 v2

5.3     Class 2: Secured Claims of Opus Bank.

Class 2 consists of the Secured Claims of Opus Bank based upon two commercial loans extended by Opus to the Debtors (the "Class 2 Claims"). The Class 2(a) Claim is the claim of Opus Bank against Gateway and the Class 2(b) Claim is the claim of Opus Bank against Gateway II. The Debtors shall pay the Class 2 Claims according to the following terms:

A.     **Description of Class 2 Claims.**  Debtors and Opus Bank entered into certain Loan Agreements, Promissory Notes, Trust Deeds and Security Agreements (respectively, "Loan Agreements", "Notes," "Trust Deeds" and "Security Agreements" and collectively the "Loan Documents"). More particularly, on or about August 28, 2015, Opus Bank loaned Gateway the sum of $5,200,000 (the "Gateway Loan") which loan is evidenced by a Promissory Note (the "Gateway Note) and further memorialized by a Loan Agreement dated August 28, 2015. Gateway's obligations under the Gateway Loan are secured by a Deed of Trust and Fixture Filing (with Assignment of Rents and Security Agreement)(the Gateway Deed of Trust") recorded on August 28, 2015, a Pledge and Security Agreement dated August 28, 2015 and UCC-1 Financing Statement filed on September 3, 2015. Opus Bank holds a security interest and lien in Gateway's assets as described in the Gateway Loan Documents including, but not limited to, the Gateway Property and Gateway's rents, accounts receivable, cash, goods, equipment, fixtures, general intangibles, instruments, chattel paper, and certain intellectual property (the "Gateway Assets"), and all products, proceeds, rents and profits of the Gateway Assets ("Cash Collateral"). The Gateway Loan is in default and has been accelerated as of October 4, 2016 such that the entire loan balance is presently due and owing. Opus has filed a proof of claim in the Gateway case asserting amounts owed on the Gateway Loan as of the petition date of $5,518,338.20 (including $130,000 of default interest) and $5,694,702.19 (including $224,611.11 of default interest) as of September 12, 2017 on the Gateway Note.

On or about August 28, 2015, Opus Bank loaned Gateway II the sum of $7,300,000 (the "Gateway II Loan") which loan is evidenced by a Promissory Note (the "Gateway II Note) and further memorialized by a Loan Agreement dated August 28, 2015. Gateway II's obligations under

CREDITOR'S CHAPTER 11 PLAN
Page 13 of 26

500867178 v2

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Case 17-41780-BDL     Doc 118     Filed 11/27/17     Ent. 11/27/17 19:01:35     Pg. 13 of 26

the Gateway II Loan are secured by a Deed of Trust and Fixture Filing (with Assignment of Rents and Security Agreement)(the Gateway II Deed of Trust") recorded on August 28, 2015, a Pledge and Security Agreement dated August 28, 2015 and UCC-1 Financing Statement filed on September 3, 2015. Opus Bank holds a security interest and lien in Gateway II's assets as described in the Gateway II Loan Documents including, but not limited to, the Gateway II Property and Gateway II's rents, accounts receivable, cash, goods, equipment, fixtures, general intangibles, instruments, chattel paper, and certain intellectual property (the "Gateway II Assets"), and all products, proceeds, rents and profits of the Gateway II Assets ("Cash Collateral"). The Gateway II Loan is in default and has been accelerated as of October 4, 2016 such that the entire loan balance is presently due and owing. Opus has filed a proof of claim in the Gateway II case asserting amounts owed on the Gateway II Loan as of the petition date of $6,826,930.41 (including $159,187.50 of default interest) and $7,035,561.06 (including $275,040.63 of default interest) as of September 12, 2017 on the Gateway II Note.

The Gateway Loan and the Gateway II Loan are cross collateralized and cross defaulted. Consequently, Opus holds a secured claim in each case in the amount of the combined balance of both loans. As of September 12. 2017, the secured claim of Opus in each case was $5,694,702.19 +$7,035,561.06 = $12,730,263.25.

**B.** **Retention of Security Interests/Credit Bid Rights.** Opus shall retain its liens on the Gateway Properties, and Gateway's Assets and Cash Collateral and the Gateway II Property, and Gateway II's Assets and Cash Collateral until Opus' Class 2 Claims secured by such Properties, Assets and Cash Collateral has been paid in full. Opus shall retain its right to credit bid all or any portion of its debt with respect to any sale of the Properties.

**C.** **Continued Use of Cash Collateral.** The Plan Administrator is authorized to use Cash Collateral to service the operational needs of the Properties pending sale and to make interest payments to Opus. The Plan Administrator shall continue to make monthly interest payments at the nondefault rate to Opus until the Allowed Claims of Opus are paid in full. With the written

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

consent of Opus, the Plan Administrator may use Cash Collateral to make tenant improvements to facilitate the leasing or sale of the Properties.

**D.    Application of Opus Account Balance to Gateway Loan.** Upon the Effective Date, Opus shall be entitled to apply the balance of funds held in the Opus Account to the Gateway Loan in partial satisfaction of the Class 2(a) Claim.

**E.    Payment.** The Plan Administrator shall pay the Allowed amount of the Class 2 Claims in full from the proceeds of the sale of the Properties. If the Properties (or either of them) are not sold by April 30, 2018, the unsold Properties shall be promptly sold by the Plan Administrator free and clear pursuant to §363 of the Bankruptcy Code on terms described in Exhibit 1 to the Plan. Under such a sale Opus shall be the stalking horse bidder based on its credit bid of such amounts which are owed on the Opus Notes as it may elect in its sole discretion to bid.

**F.    Interest Rate and Monthly Interest Rate Payments.** The Class 2 Claims shall accrue interest on the principal balances of the Gateway Note and the Gateway II Note at the contract default rate of 5% per annum over the nondefault contract rate until paid in full.

5.4    <u>Class 3: Secured Claims of Maxim.</u>

Class 3 consists of the Secured Claims asserted by Maxim (the "Class 3 Claims"). The Class 3(a) Claim is the claim of Maxim against Gateway and the Class 3(b) Claim is the claim of Maxim against Gateway II.  The Debtors shall pay the Class 3 Claims according to the following terms:

**A.    Description of Class 3 Claims.** In 2015, Maxim entered into two loan transactions with non-debtor, third party Gateway National Corporation ("Gateway National"). On September 10, 2015 it entered into an Equipment Finance Agreement with Gateway National whereby Maxim loaned Gateway National the principal sum of $750,000. Maxim further alleges that on or about November 24, 2015, Gateway National executed a promissory note in favor of Maxim in the principal amount of $2,329,600. Collectively the above loans are referred to herein as the "Maxim Loans."

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Debtors and non-debtor, third parties, Vancouver RV Park, LLC ("Vancouver RV") and DeFrees guaranteed Gateway National's obligations to Maxim. Debtors and Vancouver RV also executed certain and trust deeds in favor of Maxim regarding the Maxim Loans. By virtue of the Deed of Trust, Assignments of Rents, Security Agreement and Fixture Filing ("Maxim Trust Deed") dated November 25, 2015 and the UCC-1 Financing Statement recorded on the same day, Maxim asserts that it holds a third priority lien and security interest in the Properties, Debtors' Assets and Cash Collateral, junior to the Secured Claims of the Clark County Treasurer and Opus Bank. Maxim filed a proof of claim in each case for the same obligation in the amount of $3,317,139.98.

**B.     Retention of Security Interest.** Maxim shall retain its junior liens against the Properties, Assets, and Cash Collateral that secure the Class 3 Claims until the Class 3 Claims (to the extent they are Allowed) have been paid in full after application of amounts received by Maxim from any other collateral or source. Maxim shall retain its right to credit bid all or any portion of its debt with respect to any sale of the Properties whether by the Debtor, or by the Plan Administrator.

**C.     Continued Use of Cash Collateral.** The Plan Administrator shall be authorized to use Cash Collateral to service the operational needs of the Properties pending sale and to make interest payments to Opus.

**D.     Payment.** The Plan Administrator shall pay the Allowed amount of the Class 3 Claims from the proceeds of the sale of the Properties after the payment of senior secured creditors. If the Properties (or either of them) are not sold by April 30, 2018, the unsold Properties shall be promptly sold by the Plan Administrator free and clear pursuant to §363 of the Bankruptcy Code on terms described in Exhibit 1 to the Plan. Under such a sale Opus shall be the stalking horse bidder based on its credit bid that are owed on the Opus Notes of such amounts as it may elect in its sole discretion to bid and Maxim shall also be free to credit bid on a junior basis to Opus such amounts that are owed on the Maxim Notes as it may elect in its sole discretion to bid.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

500867178 v2

E. **Interest Rate and Monthly Interest Rate Payments.** The Class 3 Claims shall accrue interest on the principal balances of the Maxim claims at the contract rate under the Maxim loan agreement until paid in full.

5.5 Class 4: General Unsecured Claims.

Class 4 consists of all General Unsecured Claims. The Class 4(a) Claims are claims against Gateway and the Class 4(b) Claims are claims against Gateway II. Filed and scheduled general unsecured claims against Gateway total approximately $9,690.00. Filed and scheduled general unsecured claims against Gateway II total approximately $18,193.25. All Allowed Class 4 Claims shall be paid according to the following terms:

A. **Treatment of Class 4 Claims.** The Plan Administrator shall pay all Allowed Class 4 Claims from the proceeds of the sales of the Properties after payment in full of the Allowed Claims of all Secured Creditors and payment in full of all Administrative Expenses, provided that the Plan Administrator may apply any distributions payable to Gateway National Corporation to satisfy unpaid rents owed to debtor Gateway by Gateway National Corporation. In the event that proceeds from the sales of the Properties do not fully satisfy the senior claims of Secured Creditors and the Administrative Expenses, General Unsecured Creditors will not receive payments under the Plan. The Plan Proponent and the Plan Administrator shall have the right to object to any claim including General Unsecured Claims.

5.6 Class 5: Equity Interests.

Class 5 consists of the Equity Interests in the Debtors. The Holder of such Equity Interests shall retain such interests following Confirmation but shall receive no distributions on account of such interests unless and until all payments owing to holders of Allowed Claims described in this Plan have been made.

CREDITOR'S CHAPTER 11 PLAN
Page 17 of 26

500867178 v2

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# VI. CLAIMS OBJECTIONS AND TREATMENT OF DISPUTED CLAIMS

### 6.1 Administration of Claims.

Except as otherwise provided for herein, each Claim shall be allowed or disallowed, as the case may be, in such amount as the Court shall determine, whether prior to or following Confirmation, and whether pursuant to this Plan or otherwise, upon such notice as the Bankruptcy Court or Bankruptcy Rules shall permit. The Plan Administrator and any creditor shall have standing to object to Claims and Administrative Expenses. Any objection to a Claim must be filed and served in accordance with Bankruptcy Rule 3007 and the timeline under Local Bankruptcy Rule 3007-1(a) shall apply.

### 6.2 Affirmative Claims, Defenses and Counterclaims Assigned to the Plan Administrator.

On the Effective Date, the Debtors shall be deemed to have assigned to the Plan Administrator, and the Plan Administrator shall be deemed to have acquired and become the successor to, (i) all defenses, counterclaims and setoffs, whether equitable or legal, of the Joint Debtors to Claims held or asserted to be held against the Joint Debtors, or any of them, and all (ii) claims of the Joint Debtors for relief against any other party.

### 6.3 No Distribution on Disputed Claims.

Notwithstanding any provision of the Plan specifying the time for payment of distributions to holders of Claims, no payment or distribution shall be made to the holder of any Disputed Claim until the time such Claim has been determined to be an Allowed Claim. Notwithstanding the existence of a Disputed Claim in a Class to which a distribution under this Plan is due, such distribution to other creditors shall not be affected by any delay in the resolution of the Disputed Claim. Upon the allowance of any Disputed Claim, the holder shall be paid the amount that such holder would have received had its Claim been an Allowed Claim on the Effective Date.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## VII.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 7.1  <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.

Pursuant to § 365(a) of the Bankruptcy Code, the Plan constitutes a motion to authorize the Plan Administrator to assume and assign the unexpired leases set forth in Exhibit 2 (individually, "Lease," collectively, "Leases") to the purchaser(s) of the Properties in conjunction with and effective upon the closing of a sale of any of the Properties ("Closing"), and contingent on the purchaser(s)' request for such assignment. The Debtors are the lessors under each Lease. As of the date of this Plan, none of the lessees under the Leases have filed a Proof of Claim. Debtors have asserted that there are no cure payments under Section § 365(b)(1)(A) which will become due upon assumption. Any party to an unexpired lease scheduled for assumption as provided in this paragraph shall, within the same deadline and in the same manner established for objections to confirmation, file any claim for arrearage required to be cured by § 365(b)(1) of the Bankruptcy Code and any objections to the assumption. Failure to assert such arrearage or to file any objections shall constitute consent to the assumption and assignment of the lease as set out herein and a conclusive acknowledgment that no defaults or claims exist under said lease (on the part of the Debtor) that require a cure.

To the extent that the Purchaser(s) do not request an assignment of one or more of the Leases, those specific leases shall be deemed rejected effective upon Closing ("Rejection"). The Plan Administrator shall provide notice of any such Rejection to lease counterparties.  Any entity holding a claim based upon the Rejection of an unexpired lease pursuant to this Section VI must file a Proof of Claim with the Bankruptcy Court within thirty (30) days after Rejection if the Bankruptcy Case is open at that time or submit a Proof of Claim to the Plan Administrator if the Bankruptcy Case is closed at that time. Any Claim based upon the Rejection of an executory contract or unexpired lease shall be a Class 5 Claim to the extent it is an Allowed Claim. The failure of any such entity to submit a Proof of Claim as required herein within the specified time period will result in the disallowance of such Claim.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

500867178 v2

# VIII. MEANS FOR EXECUTION OF THE PLAN

8.1 <u>Sale of Properties</u>.

As detailed in the Plan, the Plan Administrator will sell the Properties to pay the Allowed Claims of creditors free and clear pursuant to § 363 of the Bankruptcy Code. **Such sales of the Properties shall be free from obligations to pay real estate excise tax or other obligations under § 1146 of the Bankruptcy Code.** Opus and Maxim shall retain their credit bid rights with respect to any such sales. The Plan provides for payment of Allowed Unsecured Claims only if the Allowed Secured Claims are paid in full. The Plan Administrator shall execute a noncontingent, purchase and sale agreement with a credit-worthy buyer for each of the Properties on or before February 28, 2018. If the Properties are not under contract with a noncontingent, purchase and sale agreement with a credit-worthy buyer by February 28, 2018, the Properties that are not under such contract shall be sold free and clear pursuant to §363 of the Bankruptcy Code on terms described in Exhibit 1 to the Plan. Under such a sale, Opus shall be the stalking horse bidder based on its credit bid of the amounts it is owed on the Opus Notes, in such amounts as it may elect in its sole discretion. The Plan Administrator shall close the sale of the Properties on or before April 30, 2018. If the sales of the Properties (or either of them) are not closed by April 30, 2018, the unsold Properties shall be sold free and clear pursuant to §363 of the Bankruptcy Code on terms described in Exhibit 1 to the Plan. **Such sale of the Properties shall be free from obligations to pay real estate excise tax or other obligations under § 1146 of the Bankruptcy Code.** Under such a sale, Opus shall be the stalking horse bidder based on its credit bid of the amounts it is owed on the Opus Notes, in such amounts as it may elect in its sole discretion.

8.2 <u>Corporate Existence and Vesting of Assets</u>.

Each of the Reorganized Debtors shall continue to exist in accordance with the laws of the State of Washington and pursuant to their respective Operating Agreements. Except as otherwise provided in this Plan, on and after the Effective Date, all assets of the respective Estates shall be

CREDITOR'S CHAPTER 11 PLAN
Page 20 of 26

500867178 v2

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Case 17-41780-BDL    Doc 118    Filed 11/27/17    Ent. 11/27/17 19:01:35    Pg. 20 of 26

vested in the respective Reorganized Debtors in accordance with 11 U.S.C. § 1141, under the control of the Plan Administrator.

KM shall continue to manage the Debtors' Properties through the collection of rents and maintenance of accounts that contain such rents until the Properties are sold. The bankruptcy cases shall remain open until the Plan Administrator files applications to close the case(s).

## IX.    MISCELLANEOUS PROVISIONS

9.1     Waiver of Avoidance Actions.

Notwithstanding any provision to the contrary in this Plan, all rights, claims and causes of action, whether equitable or legal, of the Debtors, Debtors-in-Possession or the Reorganized Debtors against all persons arising under §§ 544, 545, 547, 548 and 549 of the Bankruptcy Code, or under any other applicable non-bankruptcy law for the recovery of avoidable fraudulent conveyances or other transfers, are waived.

9.2     Unnegotiated Distribution Checks.

Pursuant to § 347(b) of the Bankruptcy Code, ninety (90) days after any distribution by the Plan Administrator provided for herein, the Plan Administrator shall stop payment on any such check remaining unpaid to a holder of an Allowed Claim and funds shall be returned to the Plan Administrator. From and after the date the Plan Administrator stops payment on any distribution check pursuant to this paragraph, the holder of the claim on account of which such check was issued shall be entitled to receive no further distributions on account of his claim and such holder's Allowed Claim shall thereupon be deemed satisfied in full.

9.3     Mailing List; Returned Distribution Checks.

The official listing of creditor identities and mailing addresses (the "Official Mailing List") is maintained by the Clerk of the Bankruptcy Court, United States Bankruptcy Court, 1717 Pacific Ave., #2100, Tacoma, WA 98402-3233. It shall be the obligation of each creditor and/or party-in-interest to assure that the Official Mailing List is current and accurate as to each such person or entity. In the event that a distribution check, that has been properly posted to the creditor's address

CREDITOR'S CHAPTER 11 PLAN
Page 21 of 26

500867178 v2

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Case 17-41780-BDL    Doc 118    Filed 11/27/17    Ent. 11/27/17 19:01:35    Pg. 21 of 26

as set forth in the Official Mailing List, is returned as undeliverable by the United States Postal Service, the Plan Administrator shall be authorized, but not required, to void such check with the applicable funds becoming unencumbered funds subject to distribution as otherwise provided for pursuant to this Plan, and deem the Claim of such creditor to be satisfied in full.

9.4   <u>Administrative Claims Bar Date</u>.

The deadline for submission of all claims entitled to priority pursuant to §§ 507(a)(1), (a)(2) and (b) of the Bankruptcy Code incurred prior to Confirmation shall be thirty (30) days following date upon which the Confirmation Order becomes a Final Order. Failure to file a claim by this date shall conclusively bar the claimant from asserting its claim, which claim shall be deemed disallowed and forever discharged.

9.5   <u>Employment of Professional Persons</u>.

The Plan Administrator shall be authorized to employ and compensate Professional Persons following Confirmation upon such terms as the Plan Administrator deems reasonable and appropriate without further order of the Court, provided that the compensation for such Professional Persons may not be paid from the proceeds of the Properties, Assets and Cash Collateral absent the express written consent of Opus.

9.6   <u>Payments Shall Be Timely</u>.

The Plan Administrator shall timely make all payments required under this Plan. Without limiting the generality of the foregoing, the Plan Administrator shall be responsible for the timely payment of quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) following confirmation of the Plan until the case is closed. After confirmation of the Plan, the Plan Administrator shall serve on the U.S. Trustee a quarterly a financial report for each quarter (or portion thereof) the case remains open. The quarterly financial report shall include a statement of all disbursements made during the course of the quarter, whether or not pursuant to the Plan.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

500867178 v2

**9.7** **Stay of Confirmation Order Shall Not Apply**.

The stay of enforceability of the order of Confirmation pursuant to Bankruptcy Rule 3020(e) shall not apply, and the order of Confirmation shall be enforceable according to its terms immediately upon entry absent further order of the Court.

**9.8** **Event of Default; Consequence of Default**.

An event of default shall occur if the Plan Administrator shall fail to comply with a material provision of this Plan. In such an event, the party alleging such default shall provide written notice of the alleged default to the Plan Administrator and the attorneys for the Plan Administrator and Opus and the attorneys for Opus.

To be effective, any notice of default must (a) conspicuously state that it is a notice of default; (b) describe with particularity the nature of the default, including a reference to the specific provision(s) of the Plan as to which a default or defaults is alleged to have occurred; and (c) describe any action the party believes is required to cure the default, including the exact amount of any payment required to cure such default, if applicable. An event of default occurring with respect to one Claim shall not be an event of default with respect to any other Claim. If, after fifteen (15) days following the receipt of the notice of default, the Plan Administrator and such party have been unable to resolve, or the Plan Administrator has been unable to cure, the asserted default, such party may proceed with any remedies available to it under applicable law, provided that nothing herein shall limit or affect the Plan Administrator's' right to seek appropriate relief from any court of competent jurisdiction.

**9.9** **Right to Revoke**.

Opus reserves the right to revoke or withdraw the Plan at any time prior to Confirmation.

**9.10** **Effect of Withdrawal or Revocation**.

If Opus revokes or withdraws the Plan prior to Confirmation, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

500867178 v2

release of any claims against the Debtors or any other Entity or to prejudice in any manner the rights of Opus in any further proceeding involving the Debtors.

## X. SATISFACTION OF INDEBTEDNESS AND DISCHARGE OF CLAIMS

The distribution made to the various classes of creditors and equity security holders as provided for in this Plan shall be in full and complete satisfaction of their Allowed Claims and Allowed Interests.

## XI. MODIFICATIONS OF THE PLAN

Pursuant to and consistent with the provisions of §§ 1127(b) and (e) of the Bankruptcy Code and Bankruptcy Rule 3019, Opus reserves the right to modify or alter the provisions of the Plan at any time prior to Confirmation.

## XII. RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

Notwithstanding Confirmation, until entry of a final decree, the Bankruptcy Court shall retain jurisdiction to ensure that the purposes and intent of the Plan are carried out. Without limiting the generality of the foregoing, the Court shall retain jurisdiction for the following purposes:

12.1     Fixing and allowing any Claim as a cost and expense of the administration of the Reorganization Case;

12.2     Hearing and determining objections to a Claim or determining the validity, priority or extent of any claim or claim of lien. The failure of any party to object to, or to examine any claim for the purpose of voting, shall not be deemed to be a waiver of the right to object to, or re-examine any claim in whole or in part;

12.3     Adjudicating adversary proceedings and contested matters pending or hereafter commenced in the Bankruptcy Case;

12.4     Hearing and determining all causes of action, controversies, disputes, or conflicts between or among the Debtors and any other party, including those that were pending prior to Confirmation;

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

12.5    Hearing and determining all questions and disputes regarding title to any property of the Debtors or the Estate;

12.6    Correcting any defect, curing any omission, or reconciling any inconsistency in the Plan or the Order of Confirmation as may be necessary to carry out the purpose and intent of the Plan;

12.7    Hearing and determining any action brought by the Plan Administrator to protect the Estate;

12.8    Issuing any order necessary to implement the Plan or Order of Confirmation, including, without limitation, such declaratory and injunctive orders as are appropriate to protect the Estate and the Reorganized Debtors from actions of creditors, or other parties;

12.9    Hearing and determining any dispute relating to the terms or implementation of the Plan or Order of Confirmation, or to the rights or obligations of any parties-in-interest with respect thereto;

12.10   The modification of the Plan after Confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code in accordance with this Plan;

12.11   Hearing and determining any action brought by the Debtors or the Debtors-in-Possession seeking to avoid any transfer of an interest of the Debtors in , or any obligation incurred by Debtors, that is avoidable pursuant to applicable law; and

12.12   Hearing and determining any motion by the Debtors for sale of any property of the Estate.

## XIII.   ENTRY OF CLOSING ORDER BY THE BANKRUPTCY COURT

The Bankruptcy Court shall enter an order concluding and terminating the Reorganization Case upon application of the Plan Administrator.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  Respectfully submitted this 27th day of November, 2017.

2

3                                             OPUS BANK

4

5                                             By: */s/ David McDermott*_____
                                                   David McDermott, First Vice President
6

7

8

9  K&L GATES LLP

10

11  By: */s/ Michael J. Gearin*_____
                Michael J. Gearin, WSBA #20982
12              Attorneys for Opus Bank

13

14

15

16

17

18

19

20

21

22

23

24

25

26